**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

HENRY LEE MONDAY,
            *Defendant-Appellant.*

No. 08-50206

D.C. No.
2:06-cr-00860-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
August 4, 2009—Pasadena, California

Filed August 2, 2010

Before: William C. Canby, Jr., Kim McLane Wardlaw and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Canby

11155

## COUNSEL

Christine S. Bautista, Assistant United States Attorney, Santa Ana, California, for the plaintiff-appellee.

Gia Kim, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

## OPINION

CANBY, Circuit Judge:

Henry Lee Monday appeals his conviction by a jury of violating 18 U.S.C. § 1709, which, in pertinent part, provides felony penalties for a United States Postal Service employee entrusted with mail who "steals, abstracts, or removes from any such letter, package, bag, or mail, any article or thing

contained therein . . . ." Monday does not dispute the essential facts of the case, which establish that, while delivering mail as a Postal Service letter carrier, he opened a letter containing a birthday card, removed $40 in cash from the card, and used a portion of those funds to purchase snack food from a liquor store. Monday's sole contention is that the district court erred in refusing to instruct the jury that, to convict, the government was required to prove that Monday had the specific intent permanently to deprive the owner of the money that he removed. We conclude that the statute, in prohibiting Postal Employees from removing contents from mailed items, contains no such specific intent requirement. We therefore affirm Monday's conviction.

## BACKGROUND

A factual twist in this case is that the incriminating letter was a "test letter" placed in the mail by postal inspectors who were conducting an investigation of Monday for mail theft. At trial, Monday attempted to turn this fact to his advantage by testifying that he "knew the letter was a 'plant' " but opened it "because [he] had a lot of things on [his] mind that [he] had wanted to discuss with the postal inspectors, and [he] figured at that time that they would come and arrest [him] or do what they had to do so [he] could talk to them." He stated that he did not intend to steal the money. Had the district court instructed the jury that conviction required proof beyond a reasonable doubt that Monday "intended to permanently deprive" the Government of its money, as Monday proposed, this rather novel defense might at least have made theoretical sense. Under the instruction actually given by the court, however, the only mental element that the Government had to prove was that Monday took the money "knowing that it belonged to someone else," a fact to which Monday had already attested.

## DISCUSSION

We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. Because the district court's refusal to give the

requested instruction raises a question of law, we view the district court's ruling de novo. *United States v. Hairston*, 64 F.3d 491, 493-94 (9th Cir. 1995).

**[1]** In determining whether 18 U.S.C. § 1709 includes as an element of the crime a specific intent permanently to deprive the owner of its property, we begin, as always, with the language of the statute. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Id.* Section 1709 provides in relevant part:

> Whoever, being a Postal Service officer or employee, . . . steals, abstracts, or removes from any . . . letter, package, bag, or mail, any article or thing contained therein, [entrusted to him or which comes into his possession intended to be conveyed by mail,] shall be fined under this title or imprisoned not more than five years, or both.

We note first that there is no explicit requirement of specific intent. Although that omission is not necessarily determinative when terms are used that traditionally are associated with specific intent, *see United States v. Lilly*, 512 F.2d 1259, 1261 (9th Cir. 1975) (holding that robbery as predicate for felony murder includes element of specific intent), we are not convinced that any such associated term controls here. Where, as here, a statute leaves its words undefined, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). We, therefore, look to the ordinary meanings of the key words of the statute that were applied to this case, namely, "steals, abstracts, or removes." 18 U.S.C. § 1709.

**[2]** Monday and the Government tussle over the meanings of the words "steal" and "abstract," which, depending on the dictionary one consults, may or may not incorporate some ele-

ment of intent. *Compare* Black's Law Dictionary 1453 (8th ed. 2004) ("steal" includes element of specific intent) *with* Webster's Third New International Dictionary 2232 (3d ed. 1976) ("steal" means "to take the property of another"). We need not resolve this question, however, because the terms "steals, abstracts, or removes" are phrased in the disjunctive; "the statute creates a single statutory offense that can be committed by alternative means." *United States v. Gonzales*, 456 F.3d 1178, 1181 (10th Cir. 2006). It is sufficient for conviction if Monday "removed" money from the envelope in the mail. " 'Remove' . . . has no accepted common law meaning. We therefore construe the term in accord with its ordinary meaning." *Id.* at 1182 n.4. The common meaning of the word "removes," no matter what dictionary one consults, uniformly lacks any connotation of intent. *See, e.g.*, 13 Oxford English Dictionary 602 (2d ed. 1989) ("To take or convey away from a place"); Webster's Third New International Dictionary 1921 (3d ed. 1976) ("[T]o move by lifting, pushing aside, or taking away or off"). Monday comes close to admitting as much in his brief, observing that "the ordinary meaning of 'remove' may not . . . connote criminal intent," and he otherwise fails to define the word. We conclude, therefore, that Monday was properly convicted of removing money from a mailed letter without any need for the jury to find that he specifically intended permanently to deprive the Government of its money.

Monday mounts a raft of arguments for reading a specific intent requirement into the word "remove" in particular and § 1709 in general. They include: the doctrine of *noscitur a sociis*; a "sparse and unilluminating" legislative history; a need to maintain consistency with the title of the statute, which includes the phrase "Theft of Mail"; an Eighth Circuit opinion interpreting a predecessor statute as of 1915; and the rule of lenity. Some or possibly all of these arguments might be availing, or at least relevant, if the language of the statute were ambiguous. But it is not. One way of violating § 1709 is to "remove" an article from a mailed letter, which Monday

assuredly did. We decline to read a specific intent requirement into that unambiguous term.

**[3]** We are also convinced that reading a specific intent requirement into § 1709's prohibition on removing contents from mailed articles would be at odds with the statutory scheme of Chapter 83 of Title 18 of the United States Code relating to the mail. For example, § 1703 makes it a crime for a postal employee to secrete, destroy, detain, delay, or open any letter or parcel in the mail, and imposes for those misdeeds the same penalty as § 1709. It does not seem reasonable to assume that Congress intended to make it a crime for a postal employee to open a piece of mail with no specific intent, but to require specific intent to constitute a crime when such an employee removes the contents from a piece of mail. Thus the statutory scheme supports our adoption of the plain meaning of "removes," to include no element of specific intent.

We are buttressed in our conclusion by decisions of two other circuits. Most on point is the decision of the Tenth Circuit in *Gonzales*, a case on all fours with ours. There the Tenth Circuit came to the same conclusion we reach today: that "to sustain a conviction under § 1709 for removing the contents of mail, the government is not required to prove a defendant possessed the specific intent to convert the contents to her own use." *Gonzales*, 456 F.3d at 1183. It was accordingly not error in that case to deny a specific intent instruction. *Id.* The Fourth Circuit also affirmed by a brief per curiam opinion a decision of a district court holding that an indictment charging a violation of the "steals, abstracts, or removes" clause of § 1709 need not allege an element of specific intent. *United States v. Greene*, 468 F.2d 920 (4th Cir. 1972) (per curiam) (affirming *United States v. Greene*, 349 F. Supp. 1112 (D. Md. 1971)). The circuits are accordingly unanimous in the position we adopt today.[1]

---

[1]Two district courts have come to a contrary conclusion. *See United States v. Rush*, 551 F. Supp. 148, 151 (S.D. Iowa 1982); *United States v. Jordan*, 284 F. Supp. 758, 760 (D. Mass. 1968).

## CONCLUSION

**[4]** Monday was properly convicted of removing money from a mailed letter in violation of 18 U.S.C. § 1709. That offense does not include an element of specific intent permanently to deprive the owner of the money of its property. The district court accordingly did not err in refusing to instruct the jury on that element. The judgment of the district court is

**AFFIRMED.**